IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JARREL WESLEY STEVENS,           )
                                 )
                    Plaintiff,   )
                                 )   Civil Action No. 25-168
         v.                      )
                                 )
FRANK BISIGNANO,[1]              )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
                    Defendant,   )

MEMORANDUM OPINION

I. **INTRODUCTION**

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Jarrel Wesley Stevens ("plaintiff") for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff contends the Administrative Law Judge (the "ALJ") a) improperly rejected the disabling opinion of plaintiff's longtime cardiology provider; b) failed to articulate the consistency of the cardiologist's opinion with disabling opinion comments by the second state agency medical reviewer; and c) improperly substituted her own lay opinion over the opinions of those medical professionals with "cherry-picked evidence" against their opinions. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence and should be reversed. In the alternative, it is plaintiff's contention that the case should be remanded for the ALJ to consider properly those opinions and their

---

1. Frank Bisignano became the Commissioner of Social on May 7, 2025, and is automatically substituted for then-Acting Commissioner Leland Dudek as a party in this case pursuant to Fed. R. Civ. P. 25(d). No further action is required due to the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

consistency with each other to determine more accurately plaintiff's residual functional capability ("RFC").   The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

Plaintiff filed a motion for summary judgment (ECF No. 6) which was denied as moot because the Federal Rules of Civil Procedure Supplemental Rules for Social Security do not contemplate that kind of motion.[2]   Plaintiff filed a brief (ECF No. 7) which is the appropriate means to seek relief. Fed. R. Civ. P. SUPP SS 6.   The Commissioner filed a brief in opposition to plaintiff's motion for summary judgment asserting that the ALJ's decision should be affirmed. (ECF No. 8.)   Plaintiff filed a reply commenting that no reply was necessary, and the Commissioner asserted only "improper post-hoc rationalizations." (ECF No. 9 at 1.)   For the reasons set forth below the court will affirm the decision of the Commissioner.

## II.   PROCEDURAL HISTORY

On August 8, 2022, plaintiff protectively filed the current Title XVI application for SSI beginning July 18, 2022, which is at issue before the court. (R. at 17.)   The claim was initially denied on November 4, 2022, and again upon reconsideration on April 13, 2023. (Id.)   On May 9, 2023, plaintiff requested a hearing, which was conducted by telephone before the ALJ on February 6, 2024. (Id.)   Because a scheduled video hearing did not occur due to technical issues,

---

2. The committee notes accompanying the Federal Rules of Civil Procedure Supplemental Rules for Social Security explain: "Rule 5 states the procedure for presenting for decision on the merits a § 405(g) review action that is governed by the Supplemental Rules. Like an appeal, the briefs present the action for decision on the merits. **This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record**. Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Fed. R. Civ. P. SUPP SS 6 (emphasis added).

plaintiff agreed to appear by telephone and testified at the telephonic hearing. (Id.)   Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial vocational expert ("VE") also testified at the hearing. (Id.)

In a decision dated June 7, 2024, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under §§ 216(i) and 223(d) and was able to make an adjustment to return to other relevant work. (R. at 29.)   Plaintiff timely requested a review of that determination and by letter dated December 27, 2024, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 1-3.) Plaintiff subsequently commenced the present action seeking judicial review.

### III.     PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

#### A.     Plaintiff

Plaintiff was born on March 26, 1985, and was 37 years old at the time his application for benefits was filed. (R. at 28.)   He completed the tenth grade and obtained a GED. (R. at 42.) Plaintiff lives with his mother, and, although they do not live with him, regularly sees his three children. (R. at 47-48.)   Plaintiff reported he could make his own meals of sandwiches, noodles, and frozen dinners. (R. at 227.)   He can drive, but does not currently have a vehicle. (R. at 48.) He can walk about a block before needing to sit. (R. at 53.)

Plaintiff was formerly employed as a delivery truck driver and a restaurant cook, but alleges he has been unable to work since he became disabled on or about July 18, 2022. (R. at 43-45.)   Plaintiff asserts that he became unable to work due to his disabling conditions, including congestive heart failure, along with shortness of breath, fatigue, and depression that result from that condition. (R. at 225-227.)   Plaintiff's medication list includes: albuterol,

aripiprazole, aspirin, bumetanide, carvedilol, cholecalciferol, clopidogrel, escitalopram oxalate, fluticasone propionate, lidocaine patch, nicotine polacrilex, rosuvastatin, sacubitril-valsartan, spironolactone, trazodone. (R. at 1818-1819.)   During the hearing the ALJ heard testimony from plaintiff regarding his physical and mental health limitations. (R. at 37-68.)

    B.    **Medical Record**

        1.    **Cardiologist Dr. Dennis McNamara**

Plaintiff has a history of heart issues. (R. at 225.)   On July 18, 2022, plaintiff had a cardiac catheterization angioplasty following a myocardial infarction. (R. at 1194-1198.)   He was regularly seen by cardiologist, Dr. Dennis McNamara ("Dr. McNamara"), at the University of Pittsburgh Medical Center's Heart Failure Clinic, for follow-up outpatient cardiology, medication management, and testing. (R. at 1185-1202, 1207-1220, 1804-1809.)   On February 16, 2023, Dr. McNamara, in an opinion provided on a cardiac questionnaire, diagnosed plaintiff with heart failure reduced ejection fraction ("HFrEF") ST-elevation myocardial infarction ("STEMI"). (R. at 1185.)   He indicated plaintiff's condition was "acute on chronic" and would limit plaintiff's physical abilities due to "fatigue and dyspnea." (R. at 185-1186.)   He recommended lifting limited to twenty pounds and climbing no more than one flight of stairs, followed by a period of rest. (R. at 1186.)

On February 23, 2023, Dr. McNamara completed a second cardiac opinion indicating his opinion that plaintiff was "incapable of even 'low stress' jobs" due to his "non-ischemic hypertensive cardiomyopathy with NYHA Class II limitations,"[3] and noted "dizziness or

---

3. "The most commonly used system [to classify heart failure] is the New York Heart Association (NYHA) Functional Classification."
https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure, last visited January 12, 2026.   NYHA Class II is "Slight limitation of physical activity.

lightheadedness could occur" due to the medication plaintiff was taking for his condition." (R. at 1208-1209.) Dr. McNamara opined that plaintiff was not a malinger. (R. at 1208.) He noted that "plaintiff's dyspnea causes depression and anxiety" and found plaintiff's overall condition to be "poor." (R. at 1209-1210.) He documented that plaintiff could walk about two blocks without rest, sit for about thirty minutes without needing to move around, stand for about ten minutes before needing to sit, and would need unscheduled breaks for about fifteen minutes as needed. (R. at 1210.) Dr. McNamara recommended plaintiff elevate his legs when sitting, occasionally lift less than ten pounds, rarely lift ten pounds and never lift twenty pounds or more. (Id.) He recommended that plaintiff rarely twist, stoop, crouch, or climb stairs, and never climb a ladder, and avoid all exposure to extreme heat, cold, wetness, humidity, noise, fumes and odors, and hazards. (R. at 1211.)

On January 4, 2024, Dr. McNamara completed a third cardiac opinion diagnosing including shortness of breath and fatigue. (R. at 1804-1805.) He opined plaintiff was "incapable of even 'low stress' jobs" and shortness of breath caused him stress, depression, and emotional difficulties. (R. at 1805.) Dr. McNamara opined that plaintiff was not a malinger. (R. at 1805.) He documented that plaintiff's condition now indicated that he could walk about one to two blocks without rest, sit for about twenty minutes without needing to move around, stand for about ten minutes before needing to sit, would need to shift positions at will, and would need unscheduled breaks for about thirty minutes several times per shift. (R. at 1806-1807.) Dr. McNamara, without further explanation or reference to support in the record, opined that

---

Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, shortness of breath or chest pain." Id.

plaintiff's condition was "guarded/poor given NYHA Class III heart failure,"[4] and plaintiff would need to elevate his legs sixty to eighty percent of the time "as high as possible." (R. at 1806-1807.)

## 2. State Agency Medical Consultants

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and RFC to work. (R. at 69-88.)  Mental health reviewers of the file, psychologist Richard Fredric Small, Ph.D., on September 30, 2022, (R. at 73), and psychiatrist John David Gravazzi, Psy.D., on re-review on March 20, 2023, (R. at 83), each noted plaintiff's claims of depression, mood, and stress, but found that there was no mental health medical examination or mental health medical opinion report in plaintiff's record.  The initial review found plaintiff was prescribed no behavioral medication and had no limitations on activities of daily living, (R. at 73).  On reconsideration the reviewer noted the findings of the initial reviewer and added that plaintiff had no history of inpatient psychiatric care. (R. at 83.) Both reviewers found plaintiff had at most mild mental limitations. (R. at 73, 83.)  "No mental RFCs were associated with the claim." (R. at 76, 87.)

On November 4, 2022, Ethel Marie Hooper, M.D., reviewed findings about plaintiff's medical conditions. (R. at 76.)  She noted plaintiff had been hospitalized in January 2022 for heart failure where he was offered, but declined, an implantable cardioverter-defibrillator; he had a hospitalization in May 2022 for heart failure, and a hospitalization in July 2022 for STEMI left anterior descending ("LAD") apex thrombus, which was treated with angioplasty. (Id.)

---

4. NYHA Class III is "Marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, shortness of breath or chest pain."
https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure, last visited January 12, 2026.

Following these events, plaintiff did not pick up his ordered medications, but later reported compliance and was tolerating pulmonary rehabilitation sessions by October 2022. (Id.) Based on the initial review, the state agency medical consultant determined plaintiff "demonstrates the maximum sustained work capability of the following: sedentary," with an overall finding of "'not disabled' given the individual's age, education, and RFC." (R. at 77.)

Upon reconsideration, on April 12, 2023, Dr. Nghia Van Tran ("Dr. Van Tran"), reviewed plaintiff's medical record, including all records available to the initial reviewer, the initial review determination, and the medical opinion provided from Dr. McNamara on February 23, 2023 (second opinion). (R. at 84.) Based on this review, the state agency medical consultant again determined plaintiff was capable of sedentary work, with an overall finding of "not disabled." (R. at 87.) The reconsideration reviewer, Dr. Van Tran, however, noted additional exertional limitations for plaintiff's RFC beyond those noted at the initial review: occasional lifting was limited to ten pounds (twenty on initial review), frequent lifting was limited to less than ten pounds (ten on initial), and standing and walking were limited to forty-five minutes in an eight-hour workday. (R. at 84.)

IV.    **LEGAL STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g). The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).   The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).   The court will not affirm a determination by substituting what it considers to be a proper basis even if it might have reached a different conclusion. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-7 (1947).   The Third Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).   "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984)).

## V.   DISCUSSION

### A.   Administrative Law Judge's Findings

Disability is defined under Title XVI of the SSA as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

Similarly, a person is unable to engage in substantial gainful activity when his physical or mental impairment or impairments are of such severity that he is not only unable to do "his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

Proceeding through the sequential evaluation process, the ALJ determined at step one that plaintiff had not engaged in substantial activity since his claimed disability date, (R. at 19); at step two acknowledged plaintiff had severe impairments of congestive heart failure, right middle cerebral artery (MCA) stroke, hypertension and obesity, (id.); and, at step three found that plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 21.)   Plaintiff exhibited non-severe impairments of major depressive disorder and generalized anxiety disorder, with mild limitations, but none that rose to the level of serious or extreme as required to satisfy the "paragraph B" criteria, and the record of his conditions did not satisfy the "paragraph C" criteria. (Id.)

Prior to commencing step four, the ALJ determined plaintiff's RFC.   The ALJ considered plaintiff's entire medical record, to include the medical opinions and state administrative medical reviewer's reports discussed above, and determined plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for the following additional limitations: The claimant can lift 10 pounds occasionally; stand and walk 2 hours and sit 6 hours in an 8-hour workday with normal breaks. The claimant can occasionally perform postural activities; and should avoid extreme cold, extreme heat, wetness, humidity, fumes, odors, gases, and poor ventilation.

(R. at 22.)

At step four, for purposes of assessing prior work, the ALJ utilized the plaintiff's prior work as a truck driver. (R. at 28.)   During the hearing, the ALJ heard testimony from plaintiff and acknowledged that prior work performed by plaintiff at the heavy level would no longer be available as he is limited to "less than the full range of sedentary work" given his physical and mental limitations. (Id.)

With respect to the findings at step five, the ALJ posited a series of hypothetical questions to the VE to determine whether there was other work plaintiff was capable of performing given his physical and mental limitations. (R. at 64-67.)   Utilizing plaintiff's data as a younger individual, with a limited education, and vocational history, and based on his earlier testimony at the hearing, the VE testified that there were a significant number of jobs available in the national economy at the light level that a hypothetical individual with an RFC like plaintiff would be capable of performing. (R. at 64.)   The ALJ inquired whether he was employable if this hypothetical individual "would need to elevate his lower extremities one-third of the workday." (R. at 65.)   The VE testified that if the leg elevation was limited to six inches under the table, then there were still a significant number of jobs available in the national economy at the sedentary level. (Id.)   With respect to additional hypotheticals posed by plaintiff's attorney, the VE testified that if the hypothetical individual required elevating his legs to waist high, would need unscheduled breaks for fifteen to twenty minutes every hour, would need to change positions at will, would be off task greater than fourteen percent of any given shift, or would be absent more than one day per month, there would be no "competitive employment" available for that individual. (R. at 65-67.)   Based upon the ALJ's conclusion at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform" (R. at 28), the ALJ determined that plaintiff was not disabled. (R. at 29.)

### B. Alleged Errors

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Plaintiff's appeal of denial of SSI benefits focuses solely on the "disabling opinions" of plaintiff's cardiologist, Dr. McNamara, and state agency medical consultant reviewer, Dr. Van Tran. Specifically, he argues that the ALJ improperly rejected the opinions of plaintiff's cardiologist, Dr. McNamara, and improperly rejected the opinion of the second state agency medical consultant reviewer, Dr. Van Tran, because they included additional restrictive limitations. (Pl.'s Br., ECF. No. 7 at 14.)   He alleged that the ALJ's failure to evaluate the consistency of these opinions with one another failed a "reasonable articulation standard," and the ALJ substituted her own lay opinion over the opinions of those medical professionals with "cherry-picked evidence" against their opinions. (Id. at 14-15.)   Plaintiff's appeal does not contest the opinion of the ALJ relative to any previously claimed mental health limitation. Under the circumstances, plaintiff's noted non-severe mental health related impairments, such as major depressive disorder and generalized anxiety disorder, will not be focused on in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived.")

### 1. Alleged Error in Not Accepting the Opinions of Dr. McNamara

Plaintiff challenges the ALJ's conclusion that the disabling limitations noted in the opinions of Dr. McNamara were "not persuasive." (R. at 26.)   For claims filed after March 27, 2017, like the claim in this case, the policy about how to evaluate medical evidence was altered.[5]

---

5. The prior policy gave treating physicians' opinions controlling weight (the "treating physician rule") where their positions were supported by medical evidence and were not otherwise inconsistent with other substantial evidence in the record. See Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

11

> The new rules provide that adjudicators will evaluate all medical opinions and findings using the factors delineated in the new regulations; supportability and consistency are the most important factors and their application must be explained; other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's: "treatment relationship" with the claimant including length, frequency, purpose and extent of the treating relationship and whether the source has an examining (as opposed to non-examining) relationship with the claimant; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the SSA disability program's policies and evidentiary requirements.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 172 (2025 ed., Thomson Reuters, 2025) (quoting 20 C.F.R §§ 404.1520c(b), (c); 416.920c(b), (c), (2017)).   In applying the altered policy, a district court commented:

> [I]n March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis…. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." **The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability**," [and a]n ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.
>
> Densberger v. Saul, No. 1:20-CV-772, 2021 WL 1172982 at *7-8 (M.D. Pa. Mar. 29,

2021) (quoting 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)) (emphasis added).   The ALJ considered and addressed the supportability and consistency of Dr. McNamara's opinions.   She explained why the opinions of Dr. McNamara were considered, but the more extreme limitations

12

he noted were found to be "not persuasive." (R. at 26.)   The ALJ noted that Dr. McNamara's own prior treatment notes, and comments attributed to plaintiff's self-reports, contradicted the assertions put forth in his opinions about the more extreme limitations he noted.   For example, plaintiff, in November 2022, reported that "he was doing all right since his last visit." (R. at 26.) The ALJ quoted from Dr. McNamara's September 2023 notes, which reported plaintiff had "done well since his July 2022 infarction" and had "completely recovered since his July 2023 small stroke." (R. at 25.)   "A nuclear stress test showed no evidence of ischemia, and his ejection fraction was estimated at 33%." (Id.)   Plaintiff "had some dyspnea on exertion but overall appeared to be NYHA class II in terms of his limitations." (R. at 26.)   The ALJ referenced the improvement in plaintiff's ejection fraction, which Dr. McNamara's treatment notes from November 2022, noted was twenty-five percent, but by September 2023 it was estimated to be thirty-three percent (R. at 24-25, 1815.)   Plaintiff consistently had no issues with fluid retention or lower extremity edema, or when he did, found it to be "quite manageable," as the ALJ cited from treatment notes from August 2022, June 2023, July 2023, and September 2023. (R. at 24-26, 1818.)   The ALJ further found the limitations listed in Dr. McNamara's opinions to be "inconsistent with the record" when plaintiff "had 5/5 strength and normal gait. … ejection fraction had improved, and [plaintiff] had fully recovered from his stroke." (R. at 26-27.)

"Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved for the Commissioner." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 447 (2025 ed., Thomson Reuters, 2025) (quoting Winn v. Comm'r Soc. Sec. Admin., 894 F.3d 982, 987 (8th Cir. 2018)).   The Third Circuit Court of Appeals has noted that when an "ALJ did not

13

merely rubber stamp [a medical source] RFC conclusion" then it can be considered to have been "properly considered by the ALJ." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361-62 (3d Cir. 2011).

With respect to the limitations determined by the ALJ:

> [S]ocial security regulations permit, and indeed require, an ALJ to offer "a narrative discussion describing how the evidence supports each" limitation at step four of the disability analysis. That suggests a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019) (quoting SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996)).   In nearly six pages of the ALJ's decision, the ALJ offered the kind of narrative discussion described in Hess to explain the work-related limitations she found appropriate and why she found "the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 23.)   For example, the ALJ acknowledges plaintiff's "reduced ejection fraction, ongoing hypertension, obesity and a history of having had a stroke," but found that the disabling limitations opined by Dr. McNamara were "not supported by his own assertion in June 2023 that [plaintiff] had stable NYHA II symptoms, and that he had reported some lower extremity edema, but that it appeared 'quite manageable.'" (R. at 25-26.) Discounting Dr. McNamara's opinion that plaintiff will require unscheduled breaks, the ALJ noted that plaintiff's "ejection fraction had improved. And that [plaintiff] had fully recovered from his stroke." (R. at 27.)   The ALJ concluded the record supported the ALJ's RFC determination that "a limitation to less than the full range of sedentary work with additional postural and environmental limitations accounts for the [plaintiff's] congestive heart failure, stroke, hypertension and obesity." (Id.)

14

As noted, this court, even if it would have reached a different conclusion, needs to consider whether the ALJ's decision is supported by substantial evidence. Here, the ALJ fully considered Dr. McNamara's opinions, evaluated that the disabling limitations noted in the opinions were not supported or were not fully consistent with plaintiff's record and explained why the RFC the ALJ determined was sufficient to address plaintiff's limitations. There is substantial evidence to support the weight given by the ALJ to Dr. McNamara's opinions and she sufficiently explained the reasons for her conclusion.

### 2. Alleged Error in Not Accepting One of the Additional Limitations in the Opinion of Dr. Van Tran

Plaintiff contends that the ALJ erred in rejecting one of the limitations in the opinion by state agency medical consultant Dr. Van Tran. For the same reasons as set forth in her rejection of certain of Dr. McNamara's opinions, the ALJ found the additional limitation "limiting [plaintiff] to standing and/or walking only 45 minutes in an 8-hour workday" noted by the state agency medical consultant was "not warranted" and not consistent with the record. (R. at 27.) Specifically, the ALJ noted that the additional limitation was "not warranted" in Dr. Van Tran's opinion, because it "is inconsistent with [plaintiff's] stable NYHA II symptoms, an improved ejection fraction, and his complete recovery from a stroke." (Id.)

Here, the ALJ considered the opinions of the state agency mental health consultants and plaintiff's medical record as a whole. The ALJ accepted Dr. Van Tran's opinion limiting plaintiff to "occasionally lift 10 pounds," (R. at 84), incorporating that into plaintiff's RFC, (R. at 22), despite the initial level reviewer finding lifting limitations for "20 pounds," (R. at 74), and plaintiff's testimony at the hearing that he was capable of lifting "probably 20 pounds -- 25, 30 pounds." (R. at 51.) For the reasons discussed above, the ALJ determined that an additional

15

standing restriction in Dr. Tran's opinion on reconsideration was greater than necessary to account for plaintiff's limitations. The ALJ, in determining plaintiff's RFC, considered plaintiff's limitations, based upon a review of the record including, plaintiff's testimony and the medical source opinions, and drew a conclusion different than plaintiff might have.

### 3. Alleged Error in Not Articulating the Consistency Between Dr. McNamara's and Dr. Tran's Opinions

Plaintiff argues the ALJ should have found the opinions of Dr. McNamara and Dr. Van Tran "consistent to a degree." (Pl.'s Br., ECF. No. 7 at 14.) This logic is flawed for two reasons. First, the ALJ could determine what work-related functions were supported by the record as a whole. See 20 C.F.R. § 404.1520b. Second, Dr. Van noted an additional limitation, but he ultimately found plaintiff capable of sedentary work and "not disabled." (R. at 87.)

The ALJ did not ignore any evidence submitted by plaintiff and, as discussed above, there is substantial evidence to support the ALJ's findings. See Amaya v. Comm'r of Soc. Sec., No. CV 19-00287, 2020 WL 6336181, at *3 (D.N.J. Oct. 29, 2020) ("The ALJ's decision does not require reversal for two key reasons. First, there is no indication that the ALJ ignored any of the evidence relied upon by [plaintiff] on appeal. … Second, although the evidence upon which [plaintiff] relies could support a contrary finding, there was substantial evidence to support the finding the ALJ did make"); see also Maldonado v. Comm'r of Soc. Sec., 98 F. App'x 132 (3d Cir. 2004). The ALJ did address the consistency and supportability of Dr. McNamara's opinions and the additional standing limitation recommended in Dr. Van Tran's opinion, and there is substantial evidence to support the weight given by the ALJ to each of those opinions. As discussed above, the ALJ sufficiently explained the reasons for her conclusions.

The ALJ found persuasive some of plaintiff's treating professionals' opinions and some of the state agency consultants' opinions and determined what work-related functions were supported by the record as a whole. See Zappala v. Barnhart, 192 F. App'x 174, 177 (3d Cir. 2006) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not prevent an agency's finding from being supported by substantial evidence."). It was not error for the ALJ to do so. There is substantial evidence to support the ALJ's findings. The ALJ, in determining plaintiff's RFC, explained the work-related limitations she found after review of the record and presented hypotheticals to the VE based on those findings. The VE's identification of jobs plaintiff would be able to perform that exist in significant numbers in the national economy took those limitations into consideration.

### 4. Alleged Error in the ALJ Substituting Her Own Opinion for Medical Opinions

Plaintiff asserts that the ALJ believed "Plaintiff's condition was stable and because there were certain normal findings in the record, Plaintiff must not have been as limited as two physicians believed him to be." (Pl.'s Br., ECF. No. 7 at 15.) That conclusion, plaintiff argues, is based upon "the ALJ … setting her own conclusions and cherry-pick[ing] evidence against those medical professionals." (Id.) Plaintiff notes an ALJ "cannot rely only on the evidence that supports his or her conclusion, but also must explicitly weigh all relevant, probative, and available evidence." (Id.) As discussed above, the ALJ did explain why the evidence plaintiff relies upon was not supported or was inconsistent with evidence in the record. The ALJ noted at the initial level review that the state agency medical consultant determined plaintiff was "able to work at the light exertional level; occasionally perform postural activities; and should avoid

17

concentrated exposure to extreme heat, humidity, vibration and hazards." (R. at 27.)   The ALJ's notation the initial level reviewers had determined plaintiff capable of light work was incorrect because they had determined he was capable of sedentary work.   Nonetheless, the ALJ independently determined that plaintiff's "ongoing hypertension, congestive heart failure, and history of stroke warrant limiting the claimant to sedentary work." (Id.)   The ALJ did not just rubber-stamp any medical source opinion.   She found greater limitations than what she believed had been recommended at the initial level, and she found lesser limitations than some of the severe limitations noted by Drs. McNamara and Van Tran.   The RFC that the ALJ determined for plaintiff ultimately included the lifting limitation recommended by Dr. Van Tran, the standing limitation recommended by the initial reviewer, occasional postural limitations as recommended by both state reviewers, and environmental limitations greater than what either state reviewer recommended. (See R. at 22, 74-85, 84-85.)   The ALJ sufficiently explained the reasons, based on the totality of plaintiff's record, for her conclusions in the development of plaintiff's RFC.   While plaintiff, or this court, may view the situation differently, there is substantial evidence to support the RFC developed by the ALJ.   Plaintiff may submit a new application for benefits if his conditions degrade or he obtains additional medical source opinions that support a disabling finding.

## VI.   CONCLUSION

The ALJ sufficiently explained why the opinions of Drs. McNamara and Van Tran were not fully persuasive and determined that plaintiff had the capacity to conduct sedentary work with additional limitations as defined in the RFC, despite the severe disabilities identified in step two.   The ALJ sufficiently explained the limitations she considered in forming plaintiff's RFC,

taking into account plaintiff's medical record as a whole, including the medical source opinions about plaintiff's mental health impairments.

Having considered the parties' motions, the record as a whole, and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision. The court will affirm the decision of the Commissioner.

An appropriate order and judgment will be entered.


Dated: January 30, 2026

                                                     BY THE COURT:


                                                     _s/Joy Flowers Conti_
                                                     Hon. Joy Flowers Conti
                                                     Senior United States District Judge